**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**


**SHELIA ESTES ANDREWS**                                                          **PLAINTIFF**

**V.**                                  **CASE NO.: 3:12CV00255 BD**

**CAROLYN W. COLVIN,[1] Commissioner,**
**Social Security Administration**                                          **DEFENDANT**


### ORDER AFFIRMING COMMISSIONER

Plaintiff Shelia Estes Andrews[2] sought judicial review of the denial of her

application for disability insurance benefits.  Ms. Andrews alleged that she became

disabled on May 2, 2006, based on her arthritis, diabetes mellitus, and depression.  SSA

record at 13, 184, 234.

Ms. Andrews graduated from high school and completed some college courses.

*Id*. at 43, 239.  She worked as a care giver for disabled children and adults until May,

2006.  *Id*. at 44, 218, 235, 351.  She says that she stopped working when her body gave

out.  *Id*. at 47.  She lived with her husband and five adopted children, four of them with

special needs.  *Id*. at 38-39.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of
Social Security.  She is therefore substituted as the named Defendant for Michael J.
Astrue, pursuant to Fed.R.Civ.P. 25(d).

[2] Ms. Andrews is sometimes referred to in the SSA record as Shelia Annette Estes,
and Shelia Annette Easley.  SSA Record at pp. 10-27, 32, 34, 74-83, 153.

**The Commissioner's Decision**

An administrative law judge ("ALJ") denied Ms. Andrews's application for

benefits on February 6, 2009.  The Appeals Council remanded the case for reevaluation of

Ms. Andrews's alleged mental impairments.  *Id*. at 71-83, 87-88.  On remand, after

holding a second hearing and reconsidering Ms. Andrews's application, the

Commissioner's ALJ determined that Ms. Andrews had severe impairments– bilateral

carpal tunnel syndrome; diabetes mellitus II with neuropathy; psoriatic arthritis;

depression; and anxiety.  The ALJ also found, however, that Ms. Andrews had the

residual functional capacity ("RFC") to perform a reduced range of light work.  *Id*. at 15-

25.  Because the vocational expert testified that there were jobs available that a person

with Ms. Andrews's RFC could perform,[3] the ALJ concluded that she was not disabled

under the Social Security Act and denied the application.  *Id*. at 25-27.

After the Commissioner's Appeals Council denied Ms. Andrews's request for

review, the second ALJ's decision became a final decision for judicial review.  *Id*. at 1-6.

Ms. Andrews filed this case to challenge the ALJ's decision.  (Docket entry #2)  In

---

[3]The ALJ testified that a person with Ms. Andrews's RFC could perform the jobs of distributing clerk, and routing clerk.  *Id*. at 26.  In addition, the vocational expert testified that at the sedentary level, a person with Ms. Andrews's RFC could perform the jobs of grading clerk, and telephone information clerk.  *Id*. at 27.

reviewing the decision, the court must determine whether substantial evidence supported the decision and whether the ALJ made a legal error.[4]

**Credibility**

Ms. Andrews complains about the evaluation of her credibility.  (#11 at pp. 13-16) She alleged that disabling pain prevented her from working and maintains that her diagnoses of fibromyalgia supports her allegation.  (#11 at p. 15)

An ALJ has a duty "to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).  A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."  *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

To evaluate Ms. Andrews's credibility, the ALJ followed the required two-step process and considered the required factors.[5]  SSA record at pp. 18-25; see *Policy*

---

[4]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[5]In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and

*Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).  Thus, the question before the court is whether substantial evidence supports the ALJ's credibility evaluation.

The ALJ may discount a claimant's complaints of pain if they are inconsistent with the evidence as a whole.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) ("An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole.").  Here, the ALJ determined that the medical findings were inconsistent with disabling pain.  SSA record at p. 21-22.  Substantial evidence supports that determination.

Here, the Plaintiff alleged disability due to arthritis beginning May 2, 2006, and remained eligible for benefits until December 31, 2009.  *Id*. at 15, 113.  During the relevant time period, Ms. Andrews received minimal on-going treatment for her physical complaints.

When Ms. Andrews applied for disability, the interviewer noted that Ms. Andrews had no problems sitting, standing, walking, using her hands, understanding, or concentrating.  *Id*. at 231.  Almost three months later, on July 31, 2006, Ms. Andrews was seen by her rheumatologist, Leslie McCasland, M.D., after a nine month absence from

---

aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

treatment, complaining of arthritis stiffness.  *Id*. at 611.  Ms. Andrews stated she was not

depressed or anxious and did not complain of problems with fatigue or tingling in her

extremities.  Dr. McCasland noted a "trace" amount of tenderness in Ms. Andrews's

fingers with a "little bit" of swelling but no swelling in her knees or ankles.  *Id*. at 612.

Ms. Andrews did not return to the rheumatologist until nine months later.  She was

out of most of her medications.  Dr. McCasland noted that Ms. Andrews did not have a

lot of obvious swelling but had "trace" swelling in her fingers and a slight decrease in her

right knee flexion.  *Id*. at 524-25.  Dr. McCasland gave Ms. Andrews an injection in her

right knee.  *Id*. at 524-25.  When Ms. Andrews returned to Dr. McCasland in June, 2007,

her knee was doing well.

By September, 2007, Dr. McCasland took Ms. Andrews off her medications

because she was pregnant.  *Id*. at 521-22.  During this time, Ms. Andrews was noted to

have no swelling, tenderness, and/or edema in her extremities, and no difficulty walking

or problems with her activities of daily living.  *Id*. at 534-35, 541, 585.  In January, 2008,

after Ms. Andrews suffered a miscarriage, Rick Tate, M.D. prescribed medication for

depression and anxiety and suggested that she exercise regularly.  *Id*. 708-09.

In September, 2008, after a one-year absence of treatment, Ms. Andrews returned

to her rheumatologist complaining of joint pain.  Dr. McCasland noted that Ms. Andrews

appeared to be in "no apparent distress."  *Id*. at 617.  She noted "trace" tenderness and

swelling in her hands, but Ms. Andrews could make a good fist.  *Id*. at 618.  She had

tenderness in her knees, but she had no swelling.  She also complained of hip pain, but her hips moved normally.  *Id*.  Dr. McCasland continued conservative treatment with medication.  *Id*.  In October, 2008, Dr. McCasland again noted that she was in no apparent distress but prescribed Humira for the joint pain.  *Id*. at 657.

When Ms. Andrews returned to the rheumatologist in July, 2009, she had some tenderness in the left hand and lower back.  Dr. McCasland's impression was psoriatic arthritis and fibromyalgia.  *Id*. at 648-49.  But when Ms. Andrews returned in November, she was doing really well on the Humira.  She was not stiff and had not had much joint pain.  When she did have joint pain, she took Aleve.  Dr. McCasland's impression was psoriatic arthritis.

With the exception of carpal tunnel syndrome in her right hand, for which Ms. Andrews had surgery, her symptoms were treated on a conservative basis.  Ms. Andrews had a history of non-compliance with her prescribed medications.  See *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility).   She had never received any long-term mental health treatment, and none of Ms. Andrews's physicians ever advised her that she should limit her activity.

Also contrary to her complaints of disabling pain was Ms. Andrews's activities of daily living.  She was able to maintain a home with five children, four of whom were at-

risk and special needs children.[6]  SSA record at 243.  In her December 3, 2006 function

report, she reported that she was able to prepare meals, assist with dressing and bathing

her children, and assist with their special care needs.  She also reported being able to care

for her own personal needs, do laundry, clean, go to church, pay bills, and shop.  *Id*. at

243-47.  At the hearing, Ms. Andrews testified that she was able to diaper her children,

make breakfast, give her kids their medications, and feed them with their feeding tubes.

*Id*. at 41, 50-51.

Ms. Andrews also takes issue with the following statement in the ALJ's opinion:

"The claimant's statements concerning the intensity, persistence and limiting effects of

these symptoms are not credible to the extent they are inconsistent with the above residual

functional capacity assessment."  *Id*. at p. 29.  (#11 at p. 14)  Ms. Andrews argues that the

ALJ erred by coming up with his RFC assessment first, then rejecting all of her testimony

that did not comport with the RFC.  She argues that this reverses how the ALJ should

consider a claimant's credibility.

Ms. Andrews's argument finds some support in 20 C.F.R. § 416.945(a)(3), which

states an ALJ is to consider a claimant's own descriptions and observations of limitations

in assessing the claimant's RFC (suggesting the consideration should occur before RFC is

determined).  See also *Carlson v. Astrue*, 682 F.Supp2d 1156, 1167 (D. Or. 2010).  (#12

---

[6]Ms. Andrews adopted one of the special needs children, a seven-year-old with
cerebral palsy after her alleged disability onset date.  *Id*. at 38, 40, 47, 49.

at p. 17).  But this Court does not interpret the ALJ's statement to mean that he was

relying on his own RFC determination in order to find Ms. Andrews not credible.

Instead, the ALJ complied with the general rule in 20 C.F.R. § 404.1529.  He assessed

Ms. Andrews's statements concerning her symptoms and included in his RFC assessment

those statements he found credible and excluded those he did not find credible.  See

*Curtis v. Astrue*, No. 11-6054-CV-SJ-ODS, 2012 WL 395526 at *1 (W.D. Mo. Feb. 6,

2012)(quoting *Hodgson v. Astrue*, No. 3:10–cv–6261–ST, 2011 WL 4852307, at *6,

(D.Or. Sept. 14, 2011))(rejecting a similar argument).

   The ALJ's credibility determination is supported by substantial evidence.

   **Residual Functional Capacity**

   The ALJ found that Ms. Andrews could perform light work[7] with a sit/stand

option, without constant reaching or grasping, and limited to simple work with concrete

instructions and only superficial contact with the public, co-workers, or supervisors.  SSA

record at 17.  Ms. Andrews complains that the ALJ erred by finding she could perform

any kind of work.  (#11 at pp. 11-12)

---

   [7]"Light work involves lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567.  It also
involves a good deal of walking or standing, or sitting most of the time with some
pushing and pulling of arm or leg controls.  *Id*.  To be considered capable of performing a
full range of light work, a person must have the ability to do substantially all of these
activities.  *Id*.

The ALJ must consider all of the evidence in the record when determining RFC, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). If, in the light of all the evidence, "the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S.Ct. 2287 (1987).

Ms. Andrews bases her argument that she could not perform any work on her subjective complaints of pain and her diagnoses of diabetes with neuropathy and fibromyalgia. As set forth above, there is substantial evidence to support the ALJ's credibility determination. Further, Ms. Andrews has not provided any support for her claim that her diagnoses of diabetes with neuropathy caused her functional limitations beyond those set forth in the ALJ's RFC determination.

A diagnosis of fibromyalgia alone does not establish a disabling impairment. See *Perkins v. Astrue*, 648 F.3d 892, 899-900 (8th Cir. 2011). Here, the ALJ considered Ms. Andrews's diagnosis of fibromyalgia along with her other impairments when determining her RFC. SSA record at 20. Following the diagnosis of fibromyalgia, Dr. McCasland noted that Ms. Andrews was doing well on her prescribed medication, was not stiff, and did not have a lot of joint pain. Dr. McCasland removed the fibromyalgia diagnosis.

State agency physicians performed physical RFC assessments and concluded that, in spite of her impairments, Ms. Andrews could perform light work. *Id*. at 433-40. Substantial evidence supports the ALJ's conclusion that Ms. Andrews could perform a limited range of light work

**Hypothetical**

Finally, Ms. Andrews complains that the ALJ did not ask the Vocational Expert ("VE") a proper hypothetical  because the hypothetical did not include all of her impairments.  (#11 at p. 17)  Having concluded above, however, that the ALJ did not err in assessing Ms. Andrews's credibility or RFC, the ALJ's hypothetical included all of the limitations supported by the record.  Accordingly, the VE's testimony was sufficient evidence to support the ALJ's conclusion at step five that Ms. Andrews was not disabled.

**Conclusion**

Substantial evidence supports the ALJ's decision denying Ms. Andrews's application.  The ALJ made no legal error.  For these reasons, Ms. Andrews's request for relief (docket entry # 2) is DENIED, and the decision denying the application for benefits is AFFIRMED.

DATED this 23rd day of October, 2013.

_____

UNITED STATES MAGISTRATE JUDGE